FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 07, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KARY S.,

    Plaintiff,

    v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

    Defendant.

No. 1:19-CV-03022-RHW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 11 & 12. Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Social Security Disability Insurance under Title II of the Social

---

[1]Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1**

Security Act, 42 U.S.C. §§ 401-434. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Motion for Summary Judgment, and **REMANDS** the matter back to the Commissioner for additional proceedings.

## I.    Jurisdiction

Plaintiff filed her application for Social Security Disability Insurance on January 7, 2015. AR 74. She alleged a disability onset date of January 3, 2015. AR 196. Plaintiff's application was initially denied on July 6, 2015, AR 98-100. Plaintiff's request for reconsideration was denied on October 14, 2015, AR 106-08.

Administrative Law Judge ("ALJ") Eric S. Basse held a hearing on July 26, 2017 and heard testimony from Plaintiff and vocational expert Kimberly Mullinax. AR 39-73. On March 6, 2018, the ALJ issued a decision finding Plaintiff ineligible for disability benefits. AR 15-29. The Appeals Council denied Plaintiff's request for review on December 13, 2018. AR 1-5. Plaintiff sought judicial review by this Court on February 7, 2019. ECF No. 1. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 404.1520(a). If the claimant cannot engage in her previous occupations, the ALJ proceeds to step five and the burden shifts to the Commissioner to demonstrate that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue,* 700 F.3d 386, 388-89 (9th Cir. 2012).

### III.   Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by

substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is

harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 52 years old at the alleged date of onset. AR 196. At application, the alleged conditions limiting her ability to work included severe scoliosis, severe back pain, depression, and anxiety. AR 240. The highest grade Plaintiff completed was the eleventh. AR 241. Plaintiff identified her past work as cook, housekeeper, and housekeeping/laundry supervisor. *Id*. At application, Plaintiff stated that she had stopped working on January 3, 2015 due to her conditions. AR 240.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act from the alleged date of onset, January 3, 2015, through the date of the decision, March 6, 2018. AR 15-29.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of onset, January 3, 2015. AR 17 (citing 20 C.F.R. § 404.1571 *et seq*.).

**At step two**, the ALJ found that Plaintiff had the following severe impairments: scoliosis; left hip degenerative joint disease (status post total hip replacement by report); major depressive disorder; and drug addiction and alcoholism. AR 18 (citing 20 C.F.R. § 404.1520(c)).

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 62 (citing 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). AR 20.

**At step four**, the ALJ found Plaintiff had the residual functional capacity to perform light work with the following limitations:

> Frequent climbing of ramps and stairs, and crouching; occasional kneeling and crawling; no climbing of ladders, ropes, or scaffolds; and no limitations with balancing. She should have no concentrated exposure to extremes of vibrations or hazards. She is limited to simple, routine tasks with short, simple instructions.

AR 22. The ALJ found Plaintiff had past relevant work as a housekeeping cleaner and housekeeper and that she was able to perform this past relevant work. AR 28-29.

## VI.    Issues for Review

Plaintiff argues that the ALJ's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues that the ALJ erred by: (1) failing to properly weigh the medical opinions; (2) failing to properly weigh lay

witness testimony; and (3) failing to properly consider Plaintiff's symptom statements.

## VII.   Discussion

### A. Medical Opinions

Plaintiff argues that the ALJ failed to properly weigh the opinions of Greg D. Sawyer, M.D., Ph.D., Ross Bethel, M.D., Steven Haney, M.D., Ivonne Garcia, M.S.W., William Drenguis, M.D., and Wayne Hurley, M.D. ECF No. 11 at 4-17.

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Id*. Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

### 1.  Greg D. Sawyer, M.D., Ph.D.

On October 2, 2015, Dr. Sawyer completed a psychological consultative examination. AR 346-53. Dr. Sawyer opined that Plaintiff "will have difficulty" in

the following functional abilities: (1) performing detailed and complex tasks;  (2) accepting instructions from supervisors; (3) attempting to understand, carry out and remember complex and one or two-step instructions; (4) attempting to perform work activities on a consistent basis without special or additional instructions; (5) attempting to sustain concentration and persist in work-related activity at a reasonable pace; and (6) attempting to deal with the usual stresses encountered in the workplace. AR 353. The ALJ gave the opinion partial weight and provided the following explanation:

> because the claimant did show some impairment in memory, general fund of knowledge and information, calculations, and concentration and attention on mental status testing. The claimant initially had a tendency to look away more than what was normal and was only passively cooperative with some irritability but was more open over time and towards the end of the interview her eye contact was normal.

AR 27.

First, Plaintiff argues that all of the psychological opinions are uncontradicted, so the ALJ was required to provide clear and convincing reasons to reject Dr. Sawyer's opinion. ECF No. 11 at 4-5. However, the Court finds that the ALJ failed to provide any reason for rejecting portions of the opinion. *See infra*. Therefore, by failing to provide any reason, the ALJ fell short of the clear and convincing and the specific and legitimate standards, and the Court need not make a determination regarding whether or not the opinion was contradicted in the record.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 8

Second, Plaintiff argues that the ALJ's explanation only demonstrates why the opinion was supported and failed to address any reason why the opinion was not fully accepted. ECF No. 11 at 5-6. Defendant responds that the opinion failed to specify the degree of difficulty in performing these activities, and the ALJ is tasked with interpreting the opinion. ECF No. 12 at 3-4. Therefore, Defendant asserts that the residual functional capacity took these limitations into account as they were interpreted by the ALJ. *Id.*

The ALJ's only psychological limitation included in the residual functional capacity determination is a limitation to "simple, routine tasks with short, simple instructions." AR 22. This limitation fails to take into account Plaintiff's ability to persist or any limitations with social interactions as noted by Dr. Sawyer. Social Security Ruling (S.S.R.) 96-8p states that the residual functional capacity assessment "must always consider and address medical source opinions. If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Here, the ALJ was presented with an opinion that addressed Plaintiff's ability to persist and

interact socially and failed to provide a reason why limitations in these areas were not addressed in the residual functional capacity determination. Therefore, the ALJ erred in his treatment of Dr. Sawyer's opinion.

While Defendant is accurate that identifying a "difficulty" in a functional area is not specific and does not equate to a preclusion in that functional area, the lack of specificity is not a reason the ALJ provided for failing to address Plaintiff's ability to persist and Plaintiff's limitations with social interactions. Therefore, the Defendant's rationale could be seen as a *post hoc* rationalization for the ALJ's determination. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

Defendant further argues that if there is any error, it would be harmless. ECF No. 12 at 4. However, since the case is being remanded for the ALJ to properly address the opinion of Dr. Bethel, *see ifra.*, the ALJ is instructed to address the opinion of Dr. Sawyer on remand.

### 2. Ross Bethel, M.D.

On August 30, 2016, Dr. Bethel completed a WorkFirst Documentation Request Form for Medical or Disability Condition. AR 378-80. He opined that Plaintiff could not walk more than a hundred feet and was precluded from prolonged standing. AR 378. He limited Plaintiff to working, looking for work, or

preparing for work for one to ten hours a week. *Id*. He then limited Plaintiff to light work, defined as "[a]ble to lift 20 pounds maximum and frequently lift or carry up to 10 pounds. Even though the weight lifted may be negligible, light work may require walking or standing up to 6 out of 8 hours per day, or involve sitting most of the time with occasional pushing and pulling the arm or leg controls." AR 379. Frequent was defined as "the person is able to perform the function for 2.5 to 6 hours in an 8-hour day. It isn't necessary that performance be continuous." *Id*. Occasional is defined as "the person is able to perform the function from very little up to 2.5 hours in an 8-hour day. It isn't necessary that the performance be continuous." *Id*. He further opined that Plaintiff's limitations would last for six months after her hip surgery was completed. *Id*.

The ALJ gave "great weight to the light work portion of Dr. Bethel's opinion," but rejected the limitation to working only ten hours a week for two reasons: (1) "No explanation was given as to why the claimant is limited to only 10 hours;" and (2) "it is also an issue reserved to the Commissioner." AR 28.

In assigning "great weight to the light work portion" of the opinion, the ALJ appears to overlook that this opinion included a preclusion of walking more than 100 feet and prolonged standing. The form's definition of light work takes into account the inability to walk and stand for a significant portion of the day: "light work may require walking or standing up to 6 out of 8 hours per day, or involve

sitting most of the time with occasional pushing and pulling the arm or leg controls." AR 379. This varies from the Commissioner's definition of light work, which requires standing and walking for at least six hours in an eight-hour workday. 20 C.F.R. § 404.1567(b) (light work requires "frequent lifting or carrying of objects weighing up to 10 pounds. . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls"); S.S.R. 83-10 ("Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). Therefore, Dr. Bethel's opinion was that Plaintiff was limited to less than light work as defined by the Commissioner. Dr. Bethel's preclusion on walking more than 100 feet and prolonged standing was not included in the residual functional determination. AR 22. The ALJ provided no rationale for why this portion of the opinion was rejected. Therefore, the ALJ erred in his treatment of the opinion. *See* S.S.R. 96-8p (the residual functional capacity assessment "must always consider and address medical source opinions. If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

       Defendant argues that any error would be harmless because the opinion was

only valid for six months following the hip surgery. ECF No. 12 at 10-11.

Plaintiff's hip surgery took place on November 2, 2016, AR 466, several months

after Dr. Bethel's opinion and more than twelve months from the alleged onset

date. Therefore, Defendant's argument fails and the case is remanded for the ALJ

to properly address Dr. Bethel's opinion.

### 3. Remaining Medical Opinions

The ALJ erred in his treatment of the opinions of Dr. Sawyer and Dr. Bethel

resulting in the case being remanded for additional proceedings. Therefore, the

ALJ will also readdress the opinions of Steven Haney, M.D., Ivonne Garcia,

M.S.W., William Drenguis, M.D., and Wayne Hurley, M.D. on remand.

### B. Lay Witness Testimony

Plaintiff challenges the ALJ's treatment of statements provided by her mother.

ECF No. 11 at 17-18.

Lay witness testimony is "competent evidence" as to "how an impairment

affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d

1050 (9th Cir. 2006); 20 C.F.R. § 404.1527(f); *see also Dodrill v. Shalala*, 12 F.3d

915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe

a claimant's symptoms and daily activities are competent to testify as to her

condition."). An ALJ must give "germane" reasons to discount evidence from "other

sources," such as a family member. *Dodrill*, 12 F.3d at 919.

Plaintiff's mother completed a Third-Party Function Report on February 23, 2015. AR 255-63. The ALJ gave it "partial weight," and cited 20 C.F.R. § 404.1513(a)[2] and (d)[3] when discussing it. AR 26. This was an error. Because Plaintiff filed her application prior to March 27, 2017, the appropriate provision for considering Plaintiff's mother's statements is 20 C.F.R. § 404.1527(f)[4]. On remand the ALJ will readdress the statements made in the record by Plaintiff's mother.

## C.   Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were unreliable. ECF No. 11 at 18-21.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is reliable. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical

---

[2]20 C.F.R. § 404.1513(a) defines the evidence considered by the Commissioner as "anything you or anyone else submits to us or that we obtain that relates to your claim."

[3]There is no 20 C.F.R. § 404.1513(d) as of March 27, 2017.

[4]20 C.F.R. § 404.1527(f) sets forth how opinions from sources that are not acceptable medical sources are to be considered and how the adjudicator is to articulate the weight given to such opinions.

evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098.

Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleged; however, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms to be "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 24. The ALJ then discussed the medical evidence, Plaintiff's activities, Plaintiff stopping all of her medications while using marijuana, Plaintiff's failure to follow through with mental health treatment, and Plaintiff's stability with medication. AR 24-25.

The initial issue the Court must resolve is identifying the ALJ's reasons for his determination that Plaintiff's symptom statements were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *See* AR 24. There is a current trend in ALJ decisions to find a

claimant's testimony "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," followed by a discussion of the medical evidence or other evidence in the record while failing to address how any of the evidence undermines a claimant's statements. *See Martha D. v. Saul*, 1:18-CV-03175-RHW.

The phrase "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," mimics the language set forth in the Social Security Ruling 16-3p: "In determining whether an individual is disabled, we consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." The result of S.S.R. 16-3p, effective March 28, 2016, was to rescind S.S.R. 96-7p and remove the term "credibility" from the ALJ's subjective symptom evaluation process to ensure that a claimant's statements were being compared to the record for consistency rather than examining a claimant's character. However, S.S.R. 16-3p did not change regulations or the role of symptom statements in the five-step evaluation process. It simply "eliminat[ed] the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation."

S.S.R. 16-3p. Therefore, this new policy interpretation ruling did nothing to change the regulations, or the caselaw that held stating a "general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The Ninth Cuircut found that S.S.R. 16-3p did not change how the ALJ was to address a claimant's testimony:

> This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) *citing* S.S.R. 16-3p.

The Ninth Circuit has specifically addressed that ALJ determinations that make a generic non-credibility finding followed by a summary of the medical evidence does not meet the "specific" portion of the "specific, clear and convincing" standard. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit held that when discussing a claimant's symptom testimony, "[t]he clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) citing *Moore v. Comm'r of*

*Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (internal citations omitted).[5]

Therefore, any reason the court must "infer" from the ALJ's decision as a reason for rejecting Plaintiff's testimony cannot meet the "specific, clear and convincing standard." *See Brown-Hunter*, 806 F.3d at 494 ("Although the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make, and ours only to review. As we have long held, '[W]e are constrained to review the reasons the ALJ asserts.'" citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

Here, the only reason clearly identified by the ALJ was that Plaintiff's statements were not supported by the medical evidence: "they are inconsistent because of generally normal findings on physical examination such as normal gait, normal psychomotor activity, normal motor strength, normal sensation, and normal muscle bulk and tone." AR 24. While objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects," it cannot serve as the only reason for rejecting a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

---

[5]This section has been referenced by the Ninth Circuit in decisions since the March 28, 2016 effective date of the S.S.R. 16-3p. *See Trevizo*, 871 F.3d at 678.

Both parties address other reasons that this Court can only infer as reasons the ALJ rejected Plaintiff's testimony: (1) that her statements were inconsistent with her reported activities; (2) that she stopped taking all her medications except for marijuana, (3) that she failed to follow through with mental health treatment; and (4) that she was "stable" with the use of medication. ECF No. 11 at 19-21; ECF No. 12 at 13-19. Because the ALJ failed to specifically state that Plaintiff's activities, medication use, failure to follow treatment, and symptom stability with medication were reasons he rejected her testimony, the Court will not make any inferences and will not address them further.

Therefore, the ALJ failed to provide specific, clear and convincing reasons for rejecting Plaintiff's testimony, and this must be addressed on remand.

## VIII. REMEDY

Plaintiff asks the Court to apply the credit-as-true rule and remand this case for an immediate award of benefits. ECF No. 11 at 2.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if

the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court remands for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled for the entire alleged period if all the evidence were properly evaluated. Additionally, if disability was established following a proper evaluation of the evidence, the ALJ would need to address the materiality of Plaintiff's substance use. *See Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001); S.S.R. 13-2p. Further proceedings are necessary for the ALJ to properly consider the medical opinions in the record, to properly consider the statements from Plaintiff's mother, and to properly consider Plaintiff's symptom statements. Additionally, the ALJ will supplement the record with any outstanding evidence and call a medical expert, a psychological expert, and a vocational expert to testify at a remand hearing.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED, in part.**

2. Defendant's Motion for Summary Judgment, **ECF No. 12,** is **DENIED.**

3. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

4. Judgment shall be entered in favor of **Plaintiff** and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 7th day of January, 2020.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge